All right, our final case for today, which I realize has been a long day, is Roake against Forest Preserve District of Cook County. Mr. Lubin. May it please the court. Judge, before the court in this case, and I'm happy to report that while some of the other cases had a rather convoluted procedural history, this one, at least the procedural history, is very straightforward. There was a complaint, there was a motion to dismiss, and the matter was dismissed on a motion to dismiss. The legal issues, there are two of them, and they're completely separate. I think they're completely separate. And the resolution of one of those issues, the First Amendment, really doesn't have anything to do with the resolution of the other issue, which is the stigma plus test. And I think the more interesting issue was the First Amendment, so I'm going to start with that one. And the question here is a very, very discreet question. Was Brian Roake, a police officer, speaking as a citizen when he complained about racial profiling to his employer? The Pickering test, which is an old test, 1968, says, well, if you're speaking as a citizen on a matter of public interest, then you potentially have a First Amendment right. But you obviously need to start with Garcetti. And by the time you have Garcetti and then our second decision in Spiegel against Hull, the concept of what is within one's scope as a public employee, I guess I'll say, is pretty broad. And what he's doing is he's calling up through the line of command, he's calling to attention inappropriate behavior, namely racial profiling. Why isn't that precisely what you would expect a responsible police officer to do? Well, Judge, the reason that I started with Pickering rather than Garcetti, obviously. I want you to start with Garcetti. Obviously, we have to get to Garcetti. But one of the questions that this court and other courts have attempted to answer since Garcetti was announced is, what hath Garcetti wrought? In Garcetti, one of the things that everyone agreed to in Garcetti was that the plaintiff in that matter was acting pursuant to his employment duties. And so therefore, Garcetti really didn't. And I think this court found, and I'll try to say it, Chernofsky versus Bianchi, which is 725 F 3rd 734, it remarks that the Supreme Court did not articulate a comprehensive framework for defining employee duties. Here's the thing. Don't you think Rourke had a duty to report allegations of racial profiling? Or are you saying he didn't have a duty? Because that, to me, would render his speech as part of his official duty. You know, did he have a duty? Judge, it's a good question. And I suppose the way to answer it is, in Chernofsky, did the state's attorney in Chernofsky have a duty to testify truthfully about the potentially criminal activities of his employer? And this court said that it didn't fall under his duties. Well, the force of the duty is the thing. I think what Judge Williams is getting at is, he's a police officer with the Forest Preserve District. And in that, I mean, I suppose, let's change the facts a little, make him a little bit more like Spiegel. Suppose he had spotted that somebody was helping himself to office supplies in the Forest District office and taking home reams of paper or other sorts of office supplies in an unauthorized fashion. Surely, he has a duty to report that kind of misconduct to somebody. And it's part of his job as a police officer, wouldn't you say? In that set of facts, there would absolutely be a duty. And perhaps more importantly, the duty would derive from the public employment. And that set of facts is. And so that's one form of misconduct. Why isn't racial profiling another form of misconduct he might observe a fellow officer engaged in? Similarly, something that derives from his job as a police officer. I think that's a wonderful question. And I think it gets to one of the main bones of contention between myself and my opponent, which is you can't divorce what is said, the expression that's at issue, from the analysis of whether the expression was made as a citizen. In this case, the expression was about racial profiling. It wasn't about stealing from the workplace. It wasn't about, in the case of Spiegel, the employee there was deemed by the court, the job was to search vehicles. And the employee there was told, don't search the vehicle. The employee complained about it. I was told I shouldn't search the vehicle. So there, the expression absolutely had to do with something that fell within the discreet. You can say that. Actually, what she really said was, I think smuggling of inappropriate things is happening at this prison. And so I'm going to try to crack down and really search vehicles carefully. And she's called off the job under very suspicious circumstances. And nonetheless, this court holds it's closely enough related to her job. Suppose he had noticed that the fellow police officer engaged in undue force when he made arrests in the Forest Preserve. Would that be something within the scope of his job? The citizen could notice that, too. True. And that particular example would probably be more similar to Christophic v. Orland. And that one, which actually it's an extremely recent decision, a police officer was removed from his work because he believed that what he was asked to do was essentially illegal, essentially corrupt. And he complained about it to a bunch of people, among them folks within the workplace. And he was terminated for that, pretty explicitly for that. And this court found, I think correctly, that that did not fall within his job duties. Because the only thing that falls within the job duties are those things that are the work product of the employer that is commissioned by the employer. And so the work product of the employer, in this case, the Forest Preserve, certainly was not to police the police. Well, it wasn't part of the police officer's official duties to ensure that the public is safe. You'd agree with that. I would agree with that. And part of public safety is ensuring that police follow the law. I would agree with that. So Rourke made complaints to his superior officer regarding racial profiling, which is a practice that's against the law. And Judge, I think. So these statements were made in an attempt to get the officer to stop or to urge the department to take action to protect the public. And so why aren't those part of his official duties and not protected? Judge, I think that that analysis would be overly broad. And were that analysis applied in Christoffick, then I think this court would have arrived at the opposite determination. If the question is, if the police officer's duties are so broadly spoken as to protect the public from anybody, then why in the world would Christoffick? Well, this is within the department, in the department where he's employed. Indeed, and certainly if a police officer is letting people go who may have broken the law, who may have put other people in danger, then that's something that also would endanger the public. And nonetheless, the police officer, whose job apparently is to protect the public, was deemed to be speaking as a citizen, not as an employee in Christoffick when he said, hey, I don't think it was proper that we're letting people go without sending the case on to the state's attorney when they potentially committed a crime or an illegal act. So I don't know where you get the idea that the police don't need to police themselves anyway. Most police departments, I haven't looked at the internal structure of the Forest Preserve District, but they'll have internal affairs offices. They'll have obligations on officers to report if they see anything amiss is happening. They want to police themselves. They don't want cases in courts doing this. So how do you respond to that? How do I respond to the idea that the police are indeed expected to and encouraged to bring to the attention of the leadership of the department, in whichever appropriate way that is, whether it's internal affairs or whether it's the leadership level misconduct that they observe? I would respond to that, that that would be an overly broad definition of a police officer's duties. Even if there's an internal affairs department? Something in the? Oh, thank you. And perhaps, Judge, the way to go about that question is to say, well, if the person's job is in the internal affairs department, then the person's investigation into the wrongdoing of other police officers absolutely has to do with their job duties. But if the police officer is simply a patrolman, as Brian Roke was and as Christophic was in Christophic v. Orland, then their job is not to police the police. And that's precisely what this court found to be the case in Christophic. The job of the police officer is not to police the police. The job of the police officer is to protect the public and pull over people who are committing traffic stops, call in backup if that's necessary. And their policing the police was not the work product of the police officer. That that particular job was not commissioned by the employer. OK, you can save your last minute. I'll give you a full minute.  Mr. Thompson? Good afternoon. May it please the court. Your Honor, with regard to that issue, the First Amendment issue in this case, in every case that has come before this court in which a police officer has reported to a direct supervisor concerning misconduct by another police officer, this court has found that that was within the official duty that is not speaking as a private citizen. And that was the case here. So is the answer then for the police officers to just say, OK, go on Facebook or Twitter? I guess we're in the Twitter era now. And just tweet it, and that way you'll be fine and you can bring the misconduct to the attention of the world at large? You can tweet it, or you can do what happened in Kristofek, and that is go to an outside agency. That was the FBI. You can go to the CNN. You can do whatever. The issue is in- What a strange rule, though. It seems that there'd be a tremendous disincentive for police officers or any other kind of state employee, whether it's teachers in public schools or whether it's municipal employees, to take the preventive step of alerting hires up to misconduct and trying to get it solved right away without a big splash or outside litigation. I agree in terms of a policy issue that it may be preferable. And I don't think there's any dispute that it is preferable to have employees bring issues to their supervisors. But they'll never do it. I mean, only the stupid ones would, because they'll find out that if they go to their supervisor, they'll get fired, whereas if they go to Twitter or CNN or hire an airplane to fly it over Grant Park or something, then they're perfectly safe. Now, that's a crazy rule. I wouldn't want to adopt a rule like that because I thought the Supreme Court had really boxed me in. Well, I believe that the Supreme Court has boxed us in, Your Honor, with regard to Grissetti. And that is by saying specifically that the first issue is whether or not they're speaking as a private citizen or whether they're performing their professional duties. And if I just could mention just the significant difference, I believe, with regard to the Krzysztofek case here, is that Krzysztofek involved a part-time police officer who made a report to the FBI. That is not our circumstance here. It is not a full-time police officer with the full panoply of police powers and authority and responsibility reporting to his direct supervisor of conduct that he believes is illegal of a coworker, which all of the cases in this circuit and the Supreme Court have said constitutes activities within their professional responsibilities and not as a private citizen. So the other thing I wanted to talk to you about was the defamation. Yes. Because this case does not strike me as at all like Paul v. Davis because he alleges constructive discharge. So this is easily, if you want to call it stigma plus or whatever little phrase works for you, this is not a situation where somebody just, in some fashion, published, in the technical sense of the term, derogatory or actually, he alleges actually false information about him. Instead, you've got the constructive discharge going on. You have the example of Batavia where he loses a job opportunity that's a very concrete job opportunity as a direct result of what he believes to be inaccurate information. He wasn't on duty when this New Year's Eve event took place and it was erroneously said that he was. I don't see why this isn't a lot more than Paul v. Davis. Well, the issue with regard to the stigma plus, is that reputation by itself is not sufficient. And I just acknowledge that, but I said that's not the only thing we have here. We have him losing his job over it. We have him failing to get a second job at Batavia because of this same retaliatory act. I mean, when you look at this party, you think, of course he thought it was pretextual, or at least a jury could think so. Your Honor, the defamation did not occur in connection with his termination. The complaint alleges that the party occurred, that he was being investigated, that he resigned. So there was no defamation involved. He resigns under the shadow of these disciplinary proceedings that arose out of the New Year's Eve party. But not defamation. So I think he alleges that that's the background. The defamation is the recounting of these events to Batavia and to the others. He links them all together. Your Honor, the defamation occurs after the termination. Under the complaint, he has resigned. He is subsequently applying to a subsequent job. But the defamation prevents him from getting the job at Batavia. But it has nothing to do with the termination. Or it has everything to do with the termination. He lost his job. Batavia finds out he lost his job over this incident, allegedly. He says, not really. It's because of all this stuff about racial profiling. Chronologically, Your Honor, the termination occurred first. Right, now I understand. The only alleged defamation was that he told something to Batavia. That occurs subsequent to termination. It is not like, for example, the Colazzi versus Walker case in which the governor fires someone and at the same time issues a press release saying these people have done all these illegal things. That is a defamation in connection with the termination. This was not defamation in connection with the termination. This is alleged that it's defamation that prevented a subsequent job opportunity. Which incorporates as part of the defamation that he was terminated for doing something that he never did. Yes, but this court has said that defamation even if it limits your future employment does not constitute a cause for action unless it alters your legal status. Well, it can generically. I mean, one job, you're right. But his argument, his allegation, is that if the Forest Preserve is off there defaming him, lying about him to all prospective employers, it's a whole class of jobs which is different. But that's not the allegation in this complaint, Your Honor. The only allegation in this complaint is that in Account 3 it says that someone said something to Batavia and he was unable to get that particular job. And we have a host of cases, the most recent of which is the case that just came out in December last month in the Katz-Crank versus Hastert case in which the investigators called up the attorney's clients and told them, you know, this person has been involved with fraud. That attorney lost all kinds of business and this court held that it's not sufficient. There was no change in her status. She was not disbarred. So unless there's a change in the legal status, simply an allegation of defamation which limits future employment opportunities, and we only have one alleged future employment opportunity that was lost here, does not constitute a cause of action under the Fourteenth Amendment in this case. So here the allegation with regard to the Stigma Plus test is that there was an allegation of defamation that occurred after he was no longer employed there that reduces ability or, let's say, eliminated his possibility of getting this job with Batavia and that is the only allegation. Not that he was prevented from being employed ever, anywhere. Not that he lost his license to practice as a police officer. Not that there was any change in his legal status whatsoever. He missed out on one job and that simply is not sufficient under the precedence of this court to establish a cause of action. So we believe that under the first claim, which is the First Amendment, he is not alleged that he was acting as a private citizen rather than simply fulfilling his official duties and with regard to the Stigma Plus test, he is certainly alleged of stigma, but he is not alleged of change in the legal status such that it would permit him to move forward on this claim. All right. Thank you very much. You have a minute, Mr. Lubin. With respect to the Stigma Plus test, there's two factors. Was there a change in circumstances and then was there incidental to the change in circumstances? Sorry, a change in status and then incidental to the change in status was their stigma, which is basically the same thing as defamation. He was terminated from his job effectively under Kluge v. Chicago School Reform. That's a change in status. And he was stigmatized inasmuch as he was accused of drinking on the job, and he was not, in fact, drinking on the job. Perhaps there could be a question as to what incidental to means, but the statement that you were drinking on the job, that's why you were terminated, goes in your permanent record. And then if anyone calls up from any department in anywhere in the country or the world, why was this person terminated? What's going to be potentially forwarded on to them, as was the case in Batavia, was, well, he was terminated because he was drinking on the job. So in this case, the stigma, the defamation, was absolutely incidental to the change in status, the change in status being that he lost his job. I don't know that there's any... I don't think there's any question. I would submit that there's no question about change in status, no question about stigma. The only question is, was it incidental? And it was. Thank you, Judge. Okay, thank you very much. Thanks to both counsel. We'll take the case under advisement, and the court will be in recess.